SAMUEL, Judge.
Plaintiff, Argimiro D. Lago, M.D., filed this suit against Browne-McHardy Clinic, a medical partnership in which plaintiff had been a member, and the individual partners thereof, seeking an accounting of partnership assets, income, profits, losses and liabilities. The only property in dispute are accounts receivable and the sum of approximately $7,500 paid by the partnership as interest due in connection with the purchase of certain real estate in which the partnership now conducts its medical practice. The defense is based on the contention plaintiff already has received from the partnership everything to which he is entitled as a former partner.
After a trial on the merits, judgment was rendered dismissing plaintiff’s suit. Plaintiff has appealed from that judgment.
The partnership known as Browne-McHardy Clinic was governed by a written partnership agreement dated January 1, 1965, as amended from time to time, and the partnership existed until its liquidation on August 25, 1973. Fifteen doctors were parties to the original partnership agreement. Twenty doctors were partners on August 25,1973, the date of the liquidation. The partnership conducted its practice in the New Orleans area; eight physicians practiced in offices on St. Charles Avenue; ten physicians practiced in offices on Veterans Boulevard; and two physicians practiced in offices on Carondelet Street.
In 1973 a number of the partners decided to consolidate the operation in one location, in a new building to be constructed in Jefferson Parish on Houma Boulevard, adjacent to the East Jefferson Hospital. As this proposal contemplated termination of the partnership practice at the three locations mentioned above, a substantial minority of the partners did not favor the proposal. Accordingly, it was agreed to liquidate the existing partnership and form a new one to be composed of the partners in favor of the move.
Pursuant to the liquidation, twelve members, including the plaintiff, moved to the Houma Boulevard address. Six partners remained at the St. Charles Avenue address, continuing practice under a different name, and two partners remained at the *929 Carondelet Street office, also continuing practice under a different name. The St. Charles Avenue group received nine twenty-seconds of the accounts receivable, the Carondelet Street group retained the accounts receivable attributable to that office, and thirteen twenty-seconds of the accounts receivable were transferred to the new Houma Boulevard office.
On August 27, 1973, the majority opened its Houma Boulevard office to the public for medical services under the name “Browne-McHardy Clinic”. Accounts receivable generated by this operation were comingled with the accounts receivable transferred from the old partnership. Plaintiff practiced at the Houma Boulevard office until he terminated his relationship with the partnership on May 17, 1974. He admits he received his virile share of the partnership assets with the exception of the accounts receivable.
A document dated August 26, 1973 was prepared to govern the affairs of the Hou-ma Boulevard partnership, but it was not actually signed until a much later date because of changes desired by the partners in the old contract. The old partnership agreement provided that physicians joining the partnership do not pay for a share of the accounts receivable and that, conversely, physicians voluntarily leaving the partnership forfeit all rights except their capital and undrawn earnings to the date of departure. It is clear that under the old partnership agreement plaintiff has received everything to which he is entitled.
However, plaintiff takes the position that he is not bound by these restrictions because he did not voluntarily leave the old partnership (i. e., it was liquidated) and because he never signed the new articles of partnership. He therefore claims his virile share of the accounts receivable of the old partnership to the date of liquidation plus his share of the receivables accruing from the date of liquidation to the date of his withdrawal from the partnership.
The defendants, on the other hand, contend it was agreed upon by all partners moving to the Houma Boulevard location that upon termination of the original partnership they would be bound by the provisions of the old partnership agreement until amendments could be agreed upon. This is the basic fact question which was posed for the trial court’s consideration and which is before us for review on appeal.
The testimony overwhelmingly supports the finding that the partners who moved to the new Houma Boulevard location agreed to operate under, and be bound by, the old partnership agreement of January 1, 1965 until appropriate changes could be arranged.
The new majority, of which Dr. Lago was a member, ceased doing business on Veterans Boulevard on Friday, August 28, 1973. The move was made over the weekend, and the group opened for business at 4315 Hou-ma Boulevard the following Monday with no interruption in its medical practice. At the time of this move, all doctors had been practicing under the partnership agreement of January 1, 1965. .
The evidence shows the agreement to work under the 1965 partnership agreement was carried out in all substantial details by all of the physicians in the partnership, including Dr. Lago until his resignation in May, 1974.
Numerous members of the partnership testified at the trial that all physicians moving to the Houma Boulevard location agreed to operate under the 1965 partnership contract. Dr. George .Welch, one of the senior partners, specifically testified Dr. Lago was present when this agreement was reached and that he agreed to it. To the same effect was the testimony of Dr. Robert McHardy, Dr. Walton Schafer, Dr. Norma Kearby, Dr. James. Corcoran, Dr. Carl Kemmerly, and Dr. Robert Ayerst. While this testimony is somewhat self-serving, its basic unanimity is such as to afford it reasonable weight.
Perhaps more important is the testimony of Harold Buras, the certified public accountant for the clinic, and of Roland Roger, its business manager.
*930 Mr. Buras testified he prepared a monthly statement of earnings and apportioned them among the doctors at the Houma Boulevard office in accordance with the specific provisions of the 1965 partnership contract. Article VI of the partnership agreement is rather detailed in the manner in which partnership income was apportioned, since income was divided on a point system weighed according to productivity, seniority, board certification, and participation as a partner. After points were awarded under this formula, the month’s earnings were determined for each physician and he was paid accordingly. Each month plaintiff received his earnings based upon this formula and cashed his check without protest.
In addition, Mr. Buras prepared and delivered to the physicians, including plaintiff, a balance sheet of the partnership which did not list receivables as an asset. At no time did Dr. Lago make any complaint regarding this procedure, thus indicating he acquiesced in it.
Equally important, according to Buras, none of the doctors in the Houma Boulevard group ever reported as income the receivables which they continued to hold when they broke away from the St. Charles Avenue and Carondelet Street groups. If the action of the group was not merely a continuation of the existing partnership, each member of the group would have been compelled to report the receivables as income in 1973 because of the dissolution of the old partnership. On the contrary, none reported these receivables as income and consequently the logical conclusion to be drawn is that all of them understood the 1965 partnership agreement would be controlling until changed by them.
Buras further testified that when two physicians left the partnership, Drs. Cuellar and Craighead, neither requested nor received anything in payment of their alleged share of receivables.
Roland Roger, the business manager for the clinic, testified that when plaintiff terminated his relationship with the group he received $6,800 in payment of his capital account in strict accordance with Article X of the partnership agreement, which is the same article which plaintiff now says he disclaimed and to which he never consented. In addition, Roger testified the doctors, including plaintiff, made no change in their operation when they opened the Houma Boulevard location, he received no instructions regarding any change in the partnership agreement, he continued to proceed as he did under the old partnership agreement, and Dr. Segismundo Ureta, upon being admitted to the partnership during the disputed period, paid in his required capital in accordance with the 1965 partnership agreement now disclaimed by plaintiff.
Roger further testified he withheld 10% of plaintiff’s earnings each month in accordance with the 1965 partnership agreement, with no dispute or dissension from plaintiff. It can fairly be said from a reading of Roger’s testimony that each provision of the 1965 written partnership agreement was observed and given effect by the doctors at the Houma Boulevard establishment, including Dr. Lago, between August 25, 1973 and May 17, t1974, when Dr. Lago left the partnership.
Other facts tend to show plaintiff’s acceptance of the written articles of partnership dated January 1, 1965 and his compliance therewith during the period in dispute. Plaintiff practiced under and held himself out as a partner of Browne-McHardy Clinic during the period in question. His associate, Dr. Kemmerly, appointed plaintiff a member of the committee to consider amendments to the partnership contracts. Dr. Segismundo Ureta was elected a partner by a vote of all existing partners, including plaintiff, under Article IV of the old contract of January 1, 1965. Further, plaintiff acquiesced in a provision of Article V of the old contract by which the partners voted in accordance with a weighted formula. Associates were employed pursuant to Article VII of the old contract with plaintiff’s knowledge and approval during his tenure at the Houma Boulevard establishment. Finally, plaintiff paid in his capital contribution pursuant to Article VIII of the old contract when he became a partner in *931 1967 and received his paid-in capital when he withdrew from the clinic in 1974, even though he denies the existence or binding effect of the old contract.
The question before the trial court was one of fact, namely whether Dr. Lago, the plaintiff, agreed to be bound by the old partnership contract of January 1, 1965 until appropriate amendments thereto could be effected and implemented. The trial court obviously concluded as a matter of fact that Dr. Lago did agree to be bound by the conditions of the old contract and accordingly dismissed his suit. We agree with that finding of fact made by the trial judge.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.